UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KARI GOFF, *for K.W.H. (minor child)*,

                            Plaintiff,

    v.                                          **DECISION AND ORDER**
                                                            09-CV-794S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

       1.       Plaintiff challenges an Administrative Law Judge's ("ALJ") decision that her minor son, KWH, is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that KWH has been disabled since his birth on November 16, 2001, due to attention deficit/hyperactivity disorder ("ADHD") and oppositional defiance disorder ("ODD"), and is therefore entitled to payment of Supplemental Security Income ("SSI") under the Act.

       2.       Plaintiff filed the instant application for SSI benefits on KWH's behalf on September 22, 2006. Her application was denied. A hearing was then held before Administrative Law Judge ("ALJ") Lamar W. Davis on March 3, 2009, at which Plaintiff and KWH appeared with counsel and testified. The ALJ considered the case *de novo*, and on March 17, 2009, issued a decision denying Plaintiff's application for SSI. The Appeals Council denied Plaintiff's request for review on August 4, 2009. Plaintiff filed the current civil action on September 9, 2009, challenging Defendant's final decision.[1]

---

[1] The ALJ's March 17, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On February 18, 2010, Defendant filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano*,* 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits. See 42 U.S.C. § 1382c. In relevant part, the 1996 Act provides that an "individual under the age of 18 shall be considered disabled . . . if [he or she] has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(I).

7. Regulations promulgated by the Social Security Administration ("SSA") define "marked and severe functional limitations" in terms of "listing-level severity," *i.e.*, an impairment that meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.926a(a). In accordance with the regulations, a child's functional limitations are evaluated in six broad areas or domains of functioning: (I) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. See 20 C.F.R. § 416.926a(b).

8. The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. See 20 C.F.R. § 416.924. Specifically, the child must demonstrate that: (1) he or she is not working; (2)

he or she has a "severe" impairment or combination of impairments; and (3) his or her impairment or combination of impairments is of listing-level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See 20 C.F.R. § 416.924. A child's medically determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a.

9.      Applying the sequential evaluation in the instant case, the ALJ found: (1) KWH had not engaged in any substantial gainful activity (R. at 14);[2] (2) KWH has ADHD, ODD, and borderline intellectual functioning, which constitute severe impairments under the Act (R. at 13, 21); and (3) KWH's impairments did not meet or medically equal any listed impairments (R. at 14). In addition, the ALJ evaluated KWH's mental impairments to determine if they were "functionally equivalent" to a listed impairment. (R. at 14-23). The ALJ noted that the evidence revealed a single "marked" limitation in the domain of acquiring and using information, and therefore concluded that KWH's impairments were not functionally equal to a listed impairment. (R. at 14-23). Based on the record, the ALJ ultimately determined that Plaintiff was not under a disability, as defined by the Act, at any time from the date the application was filed, through the date of the decision, March 17, 2009. (R. at 23).

10.     Plaintiff argues that the ALJ ignored the assessment performed by Dr. Kaye, KWH's treating child psychologist. Moreover, Plaintiff contends that the ALJ did not sufficiently consider all the evidence, such as KWH's medical records, school records,

---

[2] Citations to the underlying administrative record are designated as "R."

Individualized Education Plans ("IEP"), and his mother's testimony. Plaintiff contends that consideration of this evidence indicates that KWH has marked impairment in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for self. Therefore, Plaintiff argues, the ALJ's determination that KWH was not disabled is not supported by substantial evidence in the record.

11. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that KWH was not disabled.

12. First, the ALJ stated that he reviewed all of the evidence and specifically noted that he considered the hearing testimony, psychological and psychiatric evaluations, speech/language evaluations, intelligence testing, records from emergency rooms visits, IEPs, and reports by KWH's special education teacher. This discussion is sufficient because the ALJ is not required to discuss or analyze every piece of evidence presented. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ( "When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

13. Second, the ALJ's decision that KWH was not disabled is supported by substantial evidence because the record does not support a finding that KWH exhibited marked impairment in the functions of attending and completing tasks, interacting and relating with others, or caring for self. As evidence of KWH's inability to function and marked limitations in these three domains of functioning, Plaintiff relies on Dr. Kaye's

assessed GAF score of 30. But this score is inconsistent with numerous other GAF scores in the record, which demonstrate that KWH has a much higher level of functioning. KWH's other doctors assessed him with GAF scores of 45 (R. at 393, 398 ), 50 (R. at 411), 55 (R. at 400, 405, 407, 408), and 60 (R. at 289, 395, 402, 404).[3]

In the domain of attending to and completing tasks, Dr. Ryan assessed KWH as capable of attending to, following, and understanding age-appropriate directions and capable of completing age-appropriate tasks. (R. at 205). During an occupational therapy evaluation, the therapist noted that KWH's attention to task was good and he was not distracted by other noises in the evaluation environment. (R. at 177 - 179). KWH's teacher, who taught him daily for five months and for all subjects in 2006 and 2007, noted that since starting medication, KWH was functioning very well in the domain of attending and completing tasks. (R. at 116, 118). Also with regard to this domain, State Agency doctor, Dr. Nehejl, found that KWH exhibited less than marked impairment and that both parent and teacher indicated KWH was responding well to medication. (R. at 250). This is significant supporting evidence because State Agency medical consultants are highly qualified experts in the evaluations of disability issues under the Act. See 20 C.F.R. § 416.927(f); SSR 96-6p. Under certain circumstances, the opinions of a State Agency medical consultant may even be entitled to greater weight than the opinion of a treating or examining physician. See Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993); Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995).

And in the domain of interacting and relating with others, the record reflects that with

---

[3]GAF scores between 41 and 50 indicate serious symptoms, while scores between 51 and 60 indicate moderate symptoms. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

structure, predictable routine, and adherence to his medication, KWH's behaviors were well controlled and he exhibited only mild limitations. KWH's teacher in 2006 and 2007 noted that, since starting medication, KWH was functioning very well in this domain. (R. at 119). State Agency doctor, Dr. Nehejl, found that KWH had a less than marked limitation in this domain, and had not had any suspensions from school since starting medication. (R. at 251). Additionally, in a consultative psychiatric evaluation of KWH completed in 2007, Dr. Ryan noted a good prognosis because KWH's psychiatric problems were well controlled with medication and counseling. (R. at 206).

Finally, in the domain of caring for self, the record contains substantial evidence demonstrating that KWH exhibited less than marked limitations in this area. Dr. Kaye's report, which Plaintiff argues was an extremely thorough assessment, states that "there are no immediate issues of safety to self or others," and that KWH was not "at elevated risk at the present time." (R. at 307). State Agency doctor, Dr. Nehejl, found that KWH had a less than marked limitation in this domain, and that both teacher and parent had noted a significant difference since starting medication. (R. at 251). Doctor Baskin noted that KWH was able to bathe and groom himself at age appropriate levels and opined that KWH was aware of danger and would be able to take needed precautions. (R. at 235).

Thus, this Court finds that it was reasonable for the ALJ to conclude that KWH was not disabled because, although he was limited in some domains of functioning, there is no evidence demonstrating that KWH had marked limitation in any domain of functioning other

than in the single domain of acquiring and using information.[4]

15. Having reviewed the administrative record, this Court finds that substantial evidence supports the ALJ's decision that KWH was not disabled. The ALJ thoroughly examined the record and afforded appropriate weight to all of the evidence. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: July 27, 2011
        Buffalo, New York

                                      /s/William M Skretny
                                      WILLIAM M. SKRETNY
                                      Chief Judge
                                      United States District Court

---

[4]According to the Plaintiff, KWH is currently receiving SSI benefits based on an application filed on May 1, 2009. Although little information is provided, this Court notes that the subsequent granting of a new application based on new or additional evidence does not change the fact that the ALJ's March 17, 2009 decision was supported by substantial evidence.